#40

**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

ORDELL ALEXANDER,                    :
                                     :
    Plaintiff,                       :
                                     :
           v.                    :          Civil Action
                                     :          96cv5482 (SSB)
JAMES ENSER, Individually            :
and as a sole proprietorship         :
t/a E&S METAL FABRICATORS,           :
a/k/a E&S METAL,                     :          **OPINION ON MOTION**
a/k/a E&S METAL FABRICATION,         :          **FOR A NEW TRIAL**
                                     :
    Defendants.                      :

---

**APPEARANCES:**

**MARTIN K. BRIGHAM, ESQUIRE**
GALFAND, BERGER, LURIE, BRIGHAM,
JACOBS, SWAN JUREWICZ & JENSEN, LTD.
1818 Market Street, Suite 2300
Philadelphia, PA 19103-3623
        Attorney for Plaintiff

**GEORGE A. AMACKER III, ESQUIRE**
PENNINGTON & THOMPSON, p.c.
135 Woodcrest Road
Cherry Hill, NJ 08003
        Attorney for Defendants James Enser and E & S METAL FABRICATORS

**FILED**

OCT 28 1998

AT 8:30 4:00 P M
WILLIAM T. WALSH
CLERK

**BROTMAN, District Judge:**

        Before this Court is Plaintiff's Motion for a New Trial pursuant to Rule 59(a) of

the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 59(a).

## I. Background

This products-liability matter was tried from June 22, 1998 through June 25, 1998. The Plaintiff sued the manufacturer of a conveyor belt system for injuries incurred by him during his employment. The jury, determining that the ingot conveyor system at issue was not defective, found for the defendants.

## II. Discussion

### A. Motion for New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). A new trial is warranted where a verdict is grossly excessive, bearing no rational connection to the evidence. Blakey v. Continental Airlines, Inc., 992 F.Supp. 731, 734 (D.N.J. 1998), citing Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768, 773 (3d Cir. 1987). The court should also grant a new trial if a "miscarriage of justice would result if the verdict were to stand." Id., citing Delli Santi v. CNA Insurance Companies, 88 F.3d 192, 201 (3d Cir. 1996)(quoting Fineman v. Armstrong Wold Indus, Inc., 980 F.2d 171, 211 (3d Cir. 1992)). Some courts have held that the verdict of a jury stands unless it "cries out to be overturned or shocks the conscience." See e.g. Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3rd Cir. 1991).

As a result of the authority of the jury to render a verdict based on its collected wisdom, the trial court must exercise restraint to avoid usurping the jury's primary function.  The court must proceed with caution because:

> [When a] trial judge grants a new trial on the grounds that the verdict was against the weight of the evidence, the judge . . . substitutes his own judgment of the facts and credibility of the witnesses for that of a jury . . . Thus, close scrutiny is required in order to protect the litigant's right to jury trial.

Hurley v. Atlantic City Police Dept., 933 F.Supp. 396, 403 (D.N.J. 1996); citing Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d cir. 1960), cert. denied, 364 U.S. 835 (1960).

## B. Design Defect

The liability of a manufacturer for injuries caused by a defectively designed product is governed by the New Jersey Products Liability Act (hereinafter the "NJPLA"), N.J. Stat. Ann. 2A:58C-1 et seq. (West 1987), as amended by Act of June 29, 1995 (West Supp. 1997).  The NJPLA provides in relevant part:

> 2A:58C-2 Liability of a manufacturer or seller; proof by preponderance of evidence product not reasonably fit, suitable or safe for its intended purpose. A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . . was designed in a defective manner.

N.J. Stat. Ann. 2A:58C-2 (West 1987).  A prerequisite to recovery under a theory of strict products liability is proof of a defective condition.  Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 49, 675 A.2d 620 (1996).  In a design defect case the ultimate inquiry is whether or not the manufacturer was reasonably prudent in designing the subject product.  Id. at 50, 675 A.2d 620.

3

To be successful in a design-defect claim, a plaintiff must demonstrate that:

(1) the product was defective; (2) the defect existed when the product left the manufacturer's

control; and (3) the defect caused injury to a reasonably foreseeable user or victim. Id. at 49, 675

A.2d 620; Jurado v. Western Gear Works, 131 N.J. 375, 385, 619 A.2d 1312 (1993).

Defectiveness should not be inferred from the fact that someone was injured. Zaza, 144 N.J. at

49, 675 A.2d 620.  Instead, liability under a design-defect may only be imposed where the

manufacturer is responsible for the defective condition. Id.  A manufacture will be held strictly

liable for such a defect even where the defect is a contributing or concurrent, but not the only,

cause of harm. Leslie v. U.S., 986 F.Supp. 900 (D.N.J. 1997), citing Jurado, 131 N.J. at 383, 619

A.2d 1312.

In determining whether or not a product is defective in design, courts apply the

risk-utility analysis to determine if the utility of the subject product outweighs its harm. Johnson

v. Salem Corporation, 97 N.J. 78, 477 A.2d 1246 (1984), citing O'Brien v. Muskin Corp., 94

N.J. 169, 179, 463 A.2d 298 (1983).  In the instant action, the jury was instructed that:

> A design defect may be established by proof that the risks or dangers
> of using a product outweigh its usefulness and, therefore, a reasonably
> careful manufacturer or supplier would not have sold the product at all
> in the form in which it was sold.  A product may not be considered
> reasonably safe unless the risks have been reduced to the greatest extent
> possible consistent with the product's continued utility.

Jury Charge at 18.  The jury was charged with determining whether or not the plaintiff proved by

a preponderance of the credible evidence that:

> (1) the product as designed, manufactured or sold was defective, in that it was not
> reasonably safe for its intended or reasonably foreseeable uses;
> (2) the defect existed when the product left the hands and control of the defendant;
> (3) at the time of the accident the product was being used for its intended

4

or reasonably foreseeable purpose, that is, that it was not being
misused or it has not been substantially altered in a way that was not reasonably
foreseeable;
(4) the defect in the product was a proximate cause of the accident.

See Jury Charge at 24. The jury did not go beyond question (1) of the interrogatories, finding

that the ingot conveyor system sold by Defendant was not defective.[1] Thus, the Court must

determine if such a conclusion is a miscarriage of justice. Delli Santi, 88 F.3d at 201. Relevant

evidence to consider includes the primary purpose of the product, the likelihood of injury due to

design, and the effect of improvements in safety design on the utility or the price of the product.

Johnson, 97 N.J. at 88, 477 A.2d 1251, citing O'Brien, 94 N.J. at 182, 463 A.2d 298, citing

Cepeda v. Cumberland Eng'g. Co., Inc., 76 N.J. 152, 174 386 A.2d 816 (1978).


## C. Reviewing the Evidence

The Court instructed the jury that to make a determination of whether or not a

defect existed, it must consider:

1. The usefulness and benefit of the product, as it was designed, to the user and
the public as a whole. Was there a need for this product which was specifically
served in its production?

2. The safety aspects of the product, that is, the likelihood or risk that the product
as designed would cause injury and the probable seriousness of such injury. If
there is a probability of injury, what was the seriousness of the injury which could

---

[1] Question 1 of the Interrogatories asked, "Was the ingot conveyor sold by
Defendant defective?" The jury checked "No." The instructions to the jury then read, "If you
have answered "Yes" to Interrogatory No. 1, please proceed to Interrogatory No. 2. If you have
answered "no" to Interrogatory No. 1, the Plaintiff cannot recover, and you should not answer
any further questions and should return to the Courtroom." As the jury did not reach any further
Interrogatory questions, they are not considered in this motion and therefore not noted herein.

have or should have been anticipated through the use of the product?

3. The availability of a substitute product or substitute products at the time of manufacture, sale or distribution which would meet the same needs or perform the same function as this product without containing the alleged defect. In other words, the existence of a more safely designed product diminishes the justification for using a challenged design in either the manufacture, sale or distribution of a particular product.

4. The ability of the defendant to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

Jury Charge at 19.


### 1. Usefulness of Product

Evidence presented in this case demonstrated the usefulness of the conveyor system. The ingot conveyor moves molds past a continuous pour of melted scrap aluminum. See Joint And Final Pretrial Order at 4, ¶3. No evidence was advanced that refutes this contention.


### 2. Safety Aspects of the Product

There was conflicting evidence as to the conveyor system's risk of causing injury. The Plaintiff stated that the witnesses "agreed that at the time the conveyor left Defendant's control it was foreseeable that a crushing hazard would be created, either by the pouring wheel itself or by its supporting bracket, when the pouring wheel was incorporated into the conveyor system." Plaintiff's Memorandum in Support of Plaintiff's Motion for a New Trial ("Plaintiff's Memo.") at 5, citing Testimony of Harkness, 6/22/98, at 139:6-15 and Widas, 6/25/98 at 623:19-23. However, other testimony could have refuted this evidence. For example, George Widas,

Defendant's expert witness, testified that the pour wheel was "on a hitch support system, so if you were to go under it or get near it you have dislodged it when 150 pounds of force is exerted." Testimony of Widas 6/24/98 at 539:18-21.[2]    Furthermore, Defendant Enser testified to the fact that a crushing hazard did not exist:

> Q: If someone got a portion of their body caught on that in-going nip point what would happen to it?
>
> A: The wheel would lift up.  It would not trap them, it would lift up.

Testimony of Enser, 6/24/98 at 452:3 - 452:7.  Thus, it was not a miscarriage of justice for the jury to have concluded that there was little risk that the product, as designed, would cause injury.

As to the probable seriousness of such injury, there was also conflicting testimony.  The following exchange took place in the examination of Plaintiff's expert witness, Richard Harkness, Ph.D., P.E.:

> Q: What are the extended [sic] of injuries someone could sustain if they were caught in that crushing hazard?
>
> A: Catastrophic

Testimony of Harkness, 6/22,98 at 128:13-129:14.  However, the following testimony was also received by the jury:

> Q: Is there, at that point the pour wheel entered, . . . a potential of a crush hazard at that location that could result as a catastrophic injury?
>
> A: There is a hazard that exists there, yes.

_____

[2] Although Plaintiff, throughout his motion brief, argues that Defendants' expert opinion is inadequate and incompetent, Widas' testimony was based on his experience as a Safety and Human Factors Engineer.  See Testimony of Widas, 6/24/98 at 522:15-16.  It is for the jury to determine the extent of the witness' credibility.  See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992), citing Lind, 278 F.2d at 90.

Q: Is that hazard a crushing hazard?

A: Yes.

Q: And can that hazard that exists at that position result in catastrophic injury?

A: It could in the realm of anything is possible.

Testimony of Widas 6/24/98 at 568:15 - 569:2.  Furthermore, Defendant testified to the extent of

possible injury:

Q: Isn't it true when you designed the products and sold these ingot conveyors
you recognized there is a potential crush hazard at this location [where the pour
wheel meets the conveyor]?

A: A nip hazard, not a crush hazard.

Q: A nip hazard could result in what type of an injury?

A: A pinch.

Q: Just a pinch?

A: This is what I recognize as a pinch.

Testimony of Enser, 6/24/98 at 452:18 - 453:3.  The jury never reached the issue of alterations

and misuse of the product.  Therefore, the jury could have found that, as designed, the

seriousness of injury was not high, or if it were potentially "catastrophic," the chance of such an

accident occurring was highly improbable.

### 3. Availability of a Substitute Product

There was no evidence regarding an entirely different product at the time of

manufacturing, sale or distribution that would meet the same needs or perform the same

functions without the same risk of injury.

8

### 4. Ability to Eliminate Unsafe Character of Product

Plaintiff argued that there were two ways of eliminating the conveyor system's unsafe characteristics. Plaintiff's Memo. at 8. First, Plaintiff contended that Defendant should have installed an emergency stop cord along the machine. Harkness testified that, as required by ANSI B-20.1, "when you have a conveyor, you must have a means to stop the conveyor in case of an emergency, all along the length." Testimony of Harkness, 6/22/98 at 152:1-4. Second, Plaintiff proposed a metal grating that would have prevented access to the moving conveyor. Plaintiff's Memo. at 8. In support of Plaintiff's proposition, Widas conceded the fact that an emergency stop cord at the location of the hazard would not interfere with the operation of the conveyor. Testimony of Widas, 6/24/98 at 595:14-20.

Despite Plaintiff's contentions, other evidence contested Widas' concession. For example, Plaintiff utilized Dr. Harkness testimony at 154:15 - 156:13 to support the proposition that neither measure impaired the utility of Defendant's conveyor. But this segment of Dr. Harkness' testimony merely described the possible preventative measures without discussing the potential for utility reduction. In addition, other testimony supported the argument that the risk of injury was so low that the forty dollar cost per machine suggested by Plaintiff would be too expensive an investment. For example, Widas testified that when considering the risk at the pouring wheel site, he would spend only ten dollars in prevention. Id. at 582:6-584.2.

**III. Conclusion**

In reviewing the evidence, this Court finds that the jury's determination was not against the weight of the evidence, and that the decision does not constitute a miscarriage of justice. <u>Delli Santi</u>, 88 F.3d at 201. Therefore, Plaintiff's Motion for a New Trial pursuant to Fed.R.Civ.P. 59(a) is denied.

The court will enter an appropriate order.

Dated: October 2 7, 1998

STANLEY S. BROTMAN
UNITED STATES DISTRICT JUDGE